1

2

3

4

5

6

7

8

The Honorable

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10

11

12

13

14

15

16

| | |
|---|---|
| ARTHUR MADDOX,<br><br>            Plaintiff,<br><br>vs.<br><br>UNITED NETWORK FOR ORGAN SHARING; and SWEDISH HEALTH SERVICES D/B/A SWEDISH MEDICAL CENTER,<br><br>            Defendants. | No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

17

18

19

20

Plaintiff Arthur Maddox ("Plaintiff" or "Mr. Maddox") brings this Complaint against the United Network for Organ Sharing ("UNOS") and Swedish Health Services d/b/a Swedish Medical Center ("Swedish" and collectively, the "Defendants") and alleges as follows:

## I.      INTRODUCTION

21

22

23

24

25

26

1.      For more than two decades, UNOS and its affiliated transplant hospitals used what is known as the race-based coefficient to artificially increase the observed kidney function (eGFR) scores for Black kidney disease patients. The race-based coefficient delayed Black kidney disease patients from being added to the kidney transplant waitlist and resulted in Black

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

candidates waiting much longer for kidney transplants than similarly-situated non-Black candidates.

2.      Use of the race-based coefficient was not the result of any valid scientific or peer-reviewed studies. Instead, developers of the race-based coefficient postulated that Black Americans showed increased levels of creatinine extraction because they have greater muscle mass than non-Black Americans; i.e., they relied solely on a defunct, eugenics-style racial stereotype.

3.      Making medical policy based on racial stereotypes harmed all Black Americans waiting for a kidney. This lawsuit focuses on one of them—Mr. Arthur Maddox.

4.      Mr. Maddox is a family man who served his country for more than a decade. That is, Mr. Maddox served in the Marines for six years, then spent three years in the Army, and finally served for six years in the Air Force reserves.

5.      During this time Mr. Maddox also started a family. He got married and had four kids. After leaving the military to return to civilian life, he worked managing military firing ranges, and continued to support his family. Mr. Maddox takes great pride in his service to the country, and in his career and ability to provide for his family.

6.      Mr. Maddox was first diagnosed with kidney disease in June of 2016 at the Hawaii VA Hospital. Mr. Maddox continued to work as his condition was monitored. By November of 2019, however, his condition worsened to the point that he was forced to begin dialysis, and was no longer able to work.

7.      For approximately the first three years, Mr. Maddox underwent at-home dialysis that required him to be at home every night to hook into his dialysis machine. He could not go out to dinner. He could not travel. He was essentially a prisoner in his own home. This treatment

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

was also not effective for Mr. Maddox. He gained 60 pounds and the treatments left him feeling weak, physically tired, and emotionally drained.

8.      In approximately December of 2022, Mr. Maddox's at-home dialysis failed and he was rushed to the hospital for emergency surgery. Mr. Maddox nearly died during this episode.

9.      With at-home dialysis failing, Mr. Maddox was then forced to go to a clinic for his dialysis treatments. These treatments worked better, but were extremely uncomfortable. Mr. Maddox's dialysis treatment now required large, painful needles, and trips to the clinic three days per week. The after effects of his dialysis treatments left Mr. Maddox, again, physically and emotionally exhausted.

10.     By this point, the weight of Mr. Maddox's situation became unbearable. Mr. Maddox was unable to work or provide for his family as he had for so many years. His credit score dropped over 200 points. His physical condition caused a loss of consortium with his wife and strained his marriage.

11.     Mr. Maddox was forced to have conversations with his wife and children about the possibility that he may die waiting for a kidney. The emotional distress caused to Mr. Maddox and his family was severe to the point it is difficult to capture in words.

12.     The source of at least the last two years of Mr. Maddox's physically and mentally traumatizing fight with kidney disease was Defendants' use of the race-based coefficient to taint Mr. Maddox's—and countless other Black patients'—eGFR scores. Defendants now admit these scores were artificially adjusted in a racist manner from the beginning.

13.     In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans. Thereafter, UNOS approved "a measure to require

COMPLAINT
() - 3

transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained:

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[1]

Despite prohibiting future use of the race-based coefficient, for six months, UNOS did nothing to adjust wait times for Black Americans already on the kidney waitlist.

14.     In January of 2023, UNOS instructed donor hospitals to notify Black candidates of the policy change and investigate whether Black members of their waitlists were eligible for a wait-time modification, but UNOS gave donor hospitals *an entire year* to complete this process, until January of 2024.

15.     Through this process, in August of 2023, Mr. Maddox was first informed by Swedish that he was entitled to a nearly two-year wait time adjustment. That is, Mr. Maddox was first placed on UNOS's national kidney waitlist on November 21, 2019, when he began dialysis. But absent Defendants' use of the race-based coefficient, Mr. Maddox would have qualified to join the waitlist on December 21, 2017. To be clear, August of 2023 was the first time Mr. Maddox was told or otherwise learned that the race-based coefficient existed, or that his race impacted his qualification to join the kidney waitlist.

16.     Those two years were crucial for Mr. Maddox given the living nightmare he suffered during his last two years of excruciating dialysis treatments, including the incident where his in-home dialysis failed, and he nearly died.

---

[1] This Press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.

COMPLAINT
() - 4

17.     Indeed, Mr. Maddox was informed in December of 2023 that there may be a kidney for him—whether UNOS had processed Mr. Maddox's wait time adjustment in UNet at this time is unclear—but ultimately Mr. Maddox was an alternate and did not get this kidney.

18.     Having waited for many years by this point, and having been notified that the institutions he trusted to provide medical care engaged in intentional racial discrimination against him, and having been informed that there may be a kidney only to be later informed he was just an alternate, his health failing, Mr. Maddox was scared that he would never receive a kidney and that he would die. Thus, when Defendants offered Mr. Maddox a Hepatitis C-infected kidney in January of 2024, Mr. Maddox felt he had no choice and accepted the kidney.

19.     This left Mr. Maddox to face additional medical procedures to treat the Hepatitis C that was introduced to his body through his transplant. In other words, after admitting to intentional racial discrimination against Mr. Maddox, Defendants attempted to "make it right" by offering him a take-it-or-leave it proposition with a diseased kidney.

20.     Upon information and belief, had Mr. Maddox's wait time been calculated without application of the race-based coefficient, Mr. Maddox would have been offered and received a kidney years earlier than 2024, when Mr. Maddox was ultimately first offered a diseased kidney, and Mr. Maddox would have undergone significantly less physical and emotional trauma, and would have suffered from significantly less monetary damages like increased medical costs and lost wages.

21.     There must be serious consequences for hospitals and transplant organizations that engage in such racist discrimination.

## II.     PARTIES

22.     Mr. Maddox is an individual residing in Olympia, Washington.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

23.     Defendant UNOS is a Virginia nonprofit corporation with its principal place of business in Richmond, Virginia.

24.     Defendant Swedish is a non-profit corporation organized and existing under the laws of Washington with its principal place of business in Seattle, Washington.

### III.     JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because Mr. Maddox asserts a federal cause of action alleging racial discrimination. This Court further has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

26.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and has been affected by Defendants' unlawful policies and procedures within the District, Swedish's principal place of business is within this District, and Swedish's alleged actions have occurred within the District. Thus, a substantial part of the events or omissions that gave rise to the claims asserted herein occurred within this District.

27.     This Court has personal jurisdiction over UNOS because UNOS conducts operations within Washington by virtue of its management of the kidney donor list for all patients residing within the State, including Plaintiff. UNOS makes decisions as to which patients residing in Washington will be offered donor kidneys.

28.     This Court has personal jurisdiction over Swedish because Swedish maintains its principal place of business within the State, and harmed Plaintiff by virtue of the unlawful conduct alleged herein within this State.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

### IV.   GENERAL ALLEGATIONS

2

**A.   The national kidney transplant waitlist is controlled by the Defendants, and wait time is the primary factor considered in awarding donor kidneys.**

3

4

29.     In 1984, Congress passed the National Organ Transplant Act ("NOTA"), creating

5

the Organ Procurement and Transplantation Network ("OPTN"), which was tasked with

6

maintaining a national registry for organ matching. Per the Act, this registry was to be operated

7

by a private, non-profit organization under federal contract.[2]

8

9

30.     Since that time, UNOS has acted as that private, non-profit organization which

10

operates the OPTN. As its website declares, UNOS "[m]anag[es] the national transplant waiting

11

list, matching donors to recipients 24 hours a day, 365 days a year." UNOS establishes and

12

implements policy concerning how donor kidneys will be awarded to patients with kidney

13

disease.

14

31.     UNOS claims to "develop policies that make the best use of the limited supply of

15

organs and give all patients a fair chance at receiving the organ they need, regardless of age, sex,

16

ethnicity, religion, lifestyle, or financial/social status."

17

32.     On its website, it even features pictures such as the one below, in which it touts

18

itself as promoting "fairness and equity."

19

20

21

22

23

24

25

26

---

[2] Patients can also seek a kidney from a private donor, such as a family member or friend, at the same time as they wait for a kidney on the national waitlist.

COMPLAINT
() - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11



12    33.    UNOS is contractually obligated to manage the national kidney waitlist, but does

13  not allow kidney disease patients to apply for inclusion on the kidney transplant waitlist directly

14  through UNOS.

15    34.    To be placed on the national kidney transplant waitlist, a patient must first visit

16  one of 200+ transplant hospitals, and receive a referral from his physician. In this way, the

17  transplant hospitals, like Swedish, serve as gatekeepers to patients seeking to be placed on the

18
19  national kidney waitlist.

20    35.    UNOS must approve these transplant hospitals before they are eligible to refer

21  patients to the kidney transplant waitlist. Hospitals like Swedish must agree to be bound by

22  UNOS's published policies and procedures to act as a transplant hospital. They then act as

23  UNOS's agent in managing the national transplant waitlist.

24
25    36.    The national kidney waitlist is maintained using UNOS software, known as UNet.

26  When a new patient is added to the waitlist, the referring hospital enters the patient's name and

COMPLAINT
() - 8

relevant medical information, including eGFR scores, into the UNet software, which tracks patient medical information and wait time.

37.     Each time a donor kidney becomes available, UNet's algorithm considers the information maintained in UNet and generates a list of potential medical matches, known as a match run, which ranks the medical matches on the national kidney waiting list by allocation score. These kidneys are then offered to patients through the transplant hospitals, in accordance with the UNet-generated rankings.

38.     In the UNet algorithm, qualifying wait time is worth 1/365 points per day, or one point per year. These wait time points are a significant factor in determining candidates' ranking in UNet's match runs, and ultimately which candidate will be awarded any particular kidney.

39.     Indeed, because all other factors for which candidates are assigned points are race-neutral, wait time acts as a sort of tie breaker between similarly situated Black and non-Black candidates. That is, the race-based coefficient caused Black candidates to accrue less wait time than similarly situated non-Black candidates. Non-Black candidates therefore appeared higher in match runs, and were awarded kidneys first.

40.     Importantly, referral to the waitlist does not automatically start the clock on qualifying wait time. Generally, to accrue qualifying wait time, either a patient's eGFR score must fall below 20 ml/min or the patient must begin dialysis.

**B.      The Defendants applied a racially discriminatory coefficient to Black patients' eGFR scores.**

41.     UNOS is responsible for enacting policy that determines which patients receive which donor kidneys. In this regard, UNOS offers as one of its strategic goals to "[p]rovide equity in access to transplants[.]" UNOS has fallen far short of its stated goal.

COMPLAINT
() - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

42.     For decades, despite claiming to "give all patients a fair chance at receiving the organ they need," UNOS applied a race-based coefficient to artificially inflate eGFR scores for Black Americans, overstating their kidney function by 16–18%, based upon the unsupported assumption that Black Americans have greater muscle mass and thus naturally have more creatinine in their bodily systems.

43.     As noted above, patients do not begin accruing wait time on the national kidney waitlist until their eGFR score reaches 20 ml/min. But for Black patients, even when their unadjusted eGFR score fell below 20 ml/min, the race-based coefficient artificially inflated their eGFR scores above 20 ml/min, preventing them from qualifying to accrue wait time. Thus, Black patients' eGFR scores had to fall well below 20 ml/min before they began to accrue wait time.

44.     This practice led to many Black kidney disease patients never qualifying for wait time by eGFR score because their addition to the waitlist was delayed until the patients had to start of dialysis (which is recommended when kidney function falls below 15 ml/min).

45.     UNOS's policy encouraged and allowed for use of the race-based coefficient, and UNOS knowingly used modified eGFR scores and manipulated wait times when ranking patients for kidney transplants. Specifically, UNOS is and has at all times been aware that its UNet software includes an algorithm that uses wait time as the primary factor in ranking patients for donor kidneys, and that its UNet software includes wait times for Black patients that have been manipulated by application of the race-based coefficient, including Mr. Maddox's original wait time calculation. To be clear, this modification was made to Black patients' eGFR scores entirely because of their race and was not applied to other racial groups.

46.     There has never been any serious scientific research to support use of the race-based coefficient to artificially increase Black patients' eGFR scores. Instead, the race-based

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

coefficient is based on eugenics-style racism and stereotypes that assume Black Americans are more physically fit than White Americans and other racial groups.

47.     This, of course, is junk science supported only by racial stereotypes, and not any valid scientific studies. As described in an article titled *Systemic Kidney Transplant Inequities for Black Individuals: Examining the Contribution of Racialized Kidney Function Estimating Equations*, the theory supporting the race-based modification to Black patients' eGFR scores has "not been substantiated by rigorous scientific evidence[.]"

48.     Years before UNOS took any action to review its policy allowing for use of the race-based coefficient, the practice was criticized by doctors for its racially discriminatory nature. For example, in November of 2011, Dr. Toni Martin published an article in the *American Journal of Kidney Diseases* that questioned the practice, explaining that when she attempts to explain the policy to Black patients, she "get[s] a snort of disbelief[,]" and noting the history of purported genetic differences being used against Black Americans against a backdrop of "separate and unequal."[3]

49.     Use of the race-based coefficient seriously diminishes Black patients' chances of receiving a donor kidney. For Black patients that overcome the odds and do receive a kidney from the national waitlist, their wait time is still significantly increased. Indeed, because of this eGFR manipulation, many Black patients never qualified to accrue wait time because of their eGFR score, and only began to accrue wait time when they began dialysis.

---

[3] To be clear, Mr. Maddox was unaware of this article, and Mr. Maddox was further unaware that his race affected his position on the waitlist until August of 2023.

COMPLAINT
() - 11

50.     All other factors being equal, the above-described practices have resulted in non-Black patients receiving numerous kidneys that would otherwise have been given to Black applicants had their wait time been calculated without consideration of race.

51.     The failure to receive donor kidneys has caused significant harm to Black Americans. The unfortunate reality is that many Black Americans, who could have survived if fairly considered for a donor kidney, have already passed away.

52.     Other Black Americans have suffered worsened kidney disease and/or been forced into dialysis treatment because of the lengthened wait time for a donor kidney, which has also caused myriad resulting health problems.

**C.     Even after UNOS admitted that the race-based coefficient discriminates against Black Americans, Defendants refused to timely address the problem.**

53.     In June of 2020, UNOS acknowledged the racial inequity plaguing the transplant system and the need for reform. In an article found at https://unos.org/news/racial-equity-in-transplantation/, UNOS professed a "commitment" to "saving and improving lives through transplantation, regardless of background, including race and ethnicity." But the race-based coefficient would remain in effect for years to come.

54.     In June of 2022, UNOS admitted the racially discriminatory nature of the race-based coefficient for Black Americans, approving "a measure to require transplant hospitals to use a race-neutral calculation when estimating a patient's level of kidney function." In its press release, UNOS explained that:

> For a number of years, some eGFR calculations have included a modifier for patients identified as Black. This practice has led to a systemic underestimation of kidney disease severity for many Black patients. Specifically in organ

COMPLAINT
() - 12

transplantation, it may have negatively affected the timing of transplant listing or the date at which candidates qualify to begin waiting time for a transplant.[4]

55.     UNOS posted the following passage on its website:



Organ donors        Patients

### What are other issues with the race variable in eGFR?

EGFR calculations rely on a binary approach to race. When the race variable is used in formulas, eGFR calculators only offer two response options: "Black" or "Not Black."

These options do not include a designation for mixed race or multi-racial individuals, and do not account for the existing genetic diversity within the Black population.  The concept of race is a social construct and an unreliable proxy for genetic difference, therefore not a biological marker or clinical measure.

56.     UNOS's policy officially changed on July 27, 2022, with UNOS's policy prior to that time expressly allowing for use of the race-based coefficient to artificially increase Black patients' eGFR scores.

57.     Nonetheless, UNOS continued to use the race-based coefficient as a default. For more than six months, UNOS took no affirmative steps to adjust wait times and correct for previous use of the race-based coefficient.

58.     On January 5, 2023, UNOS announced a new policy that would require donor hospitals to provide two notifications to patients on the national kidney waitlist, one notifying patients that Black Americans will be considered for wait time adjustments where the race-based coefficient delayed their accrual of wait time, and a second notification confirming this process was completed and informing patients of their status. UNOS also directed donor hospitals to

---

[4] This Press release is publicly available at https://unos.org/news/optn-board-approves-elimination-of-race-based-calculation-for-transplant-candidate-listing/.

COMPLAINT
() - 13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

investigate which patients are eligible for a wait time adjustment, and to request said adjustments with UNOS within a year, i.e., by January of 2024.

59.     While this adjustment in policy rightfully acknowledged the racially discriminatory nature of the race-based coefficient, it lacked the requisite urgency, and for many of the 27,500 Black Americans then on the national kidney waitlist, like Mr. Maddox, the policy change was too little too late. During the 18 months of lag time in adjusting wait times, Black Americans continued to suffer a race-based disadvantage in their candidacy for a donor kidney, with UNet continuing to utilize the old, improperly calculated wait times when awarding kidneys.

60.     Indeed, as discussed below, Mr. Maddox suffered from serious health problems near the end of the time period provided by UNOS for transfer hospitals to correct their wait time calculations, some of which that could potentially been avoided had Defendants moved faster to update their records.

**D.     As a result of his additional wait time for a kidney transplant, Mr. Maddox suffered significant harms.**

61.     Had the race-based coefficient not been applied to Mr. Maddox's eGFR score, Mr. Maddox would have qualified to join the national kidney waitlist December 21, 2017, his eGFR measuring at 20 ml/min or below.

62.     However, solely because Mr. Maddox is Black, the race-based coefficient was applied to Mr. Maddox's eGFR score to artificially increase his score above 20 ml/min, and Mr. Maddox was not added to the kidney waitlist.

63.     In reality, Mr. Maddox was first placed on UNOS's national kidney waitlist on November 21, 2019, when he began dialysis.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

64.     Since that time, Mr. Maddox has been required to undergo debilitating dialysis treatments, first at home, and then at a dialysis clinic, as discussed above. The at-home treatments left Mr. Maddox 60 pounds overweight, weak, tired, and emotionally drained. The dialysis clinic treatments were extremely uncomfortable, required large, painful needles, trips to the clinic three days per week, and, again, left Mr. Maddox physically and emotionally exhausted.

65.     Mr. Maddox also underwent many related health problems caused by his kidney diseases and prolonged dialysis. As explained above, Mr. Maddox was forced to have emergency surgery and almost died when his at-home dialysis failed. Moreover, Mr. Maddox also suffered from physical disfigurement and serious depression.

66.      Mr. Maddox was also forced to retire from his career of running shooting ranges for the military, causing the loss of wages and serious financial difficulties for Mr. Maddox.

67.     In sum, Mr. Maddox's kidney disease and prolonged dialysis treatments required him to go through a litany of expensive, unpleasant medical procedures, resulting in physical pain, an inability to work or enjoy life, and severe emotional distress. His diet was severely limited and he could only drink minimal amounts of fluids.

68.     Moreover, because, even after his extensive wait, Mr. Maddox was only offered a kidney infected with Hepatitis C, Mr. Maddox's post-transplant regimen has been more burdensome than if he were offered a healthy kidney.

69.     Much, if not all, of this could have all been avoided had Defendants not discriminated against Mr. Maddox. Mr. Maddox was entitled to join the waitlist in 2017, and Mr. Maddox should have had more than five years on the waitlist before his at-home dialysis failed in December of 2022, nearly causing his death. Absent Defendants' discrimination, upon

COMPLAINT
() - 15

information and belief, Mr. Maddox would have received a donor kidney before his at-home dialysis failed. Indeed, by December of 2022, UNOS had already banned use of the race-based coefficient because of its discriminatory nature, but Defendants did nothing to adjust Mr. Maddox's wait time.

## V.     CAUSES OF ACTION

### COUNT ONE
### (Violation of Title VI of the Civil Rights Act of 1964)

70.     Mr. Maddox re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

71.     This cause of action is brought by Mr. Maddox against all Defendants.

72.     UNOS and Swedish receive significant financial assistance from the Federal government.

73.     In this regard, approximately 10% of UNOS's budget is provided by the Federal government, in accordance with the National Organ Transplant Act's authorization of $7,000,000/year to fund a private, non-profit entity such as UNOS. These contracts were intended by the Federal government to act as a subsidy to UNOS, not as compensation for any goods or services provided by UNOS to the Federal government, for which there are none. Moreover, UNOS acknowledges in its financial documents that this Federal government assistance is a "grant."

74.     Swedish receives significant financial assistance from the Federal government and its programs, funding both patient care and other related operations.

75.     Defendants have engaged in racial discrimination. As alleged in detail above, Defendants allowed and encouraged use of the race-based coefficient to artificially inflate Black patients' including Mr. Maddox's eGFR scores, with UNOS adopting, encouraging, and

COMPLAINT
() - 16

implementing the race-based coefficient, and Swedish applying the race-based coefficient directly, thus delaying Mr. Maddox's accrual of wait time, and prejudicing his chances of receiving a donor kidney.

76.     Defendants further knowingly input and used these modified wait times for Black patients, including Mr. Maddox, in UNOS's UNet software, causing them to be ranked lower for specific donor kidneys than non-Black patients. Even after UNOS admitted the practice was racially discriminatory, Defendants failed to take prompt action to ensure Black patients' (including Mr. Maddox's) wait times were recalculated.

77.     The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Mr. Maddox's award of a donor kidney. This discrimination also caused Mr. Maddox to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs and costs related to the failure of his at-home dialysis, and also lost wages stemming from early retirement because of additional dialysis treatments and other resulting medical conditions caused by Defendants' application of the race-based coefficient.

78.     The above-described racial discrimination caused additional damages including but not limited to pain and suffering, severe emotional distress resulting in a looming fear of death and accompanying tearful conversations with his wife and children, constant fatigue, the inability to travel, and the loss of enjoyment of life.

### COUNT TWO
### (Violation of Washington Law Against Discrimination, Wash. Rev. Code § 49.60.010 *et seq.*)

79.     Mr. Maddox re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

COMPLAINT
() - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

80. This cause of action is brought by Mr. Maddox against all Defendants.

81. Defendants have engaged in racial discrimination. As alleged in detail above, Defendants allowed and encouraged use of the race-based coefficient to artificially inflate Black patients including Mr. Maddox's eGFR scores, with UNOS adopting, encouraging, and implementing the race-based coefficient, and Swedish applying the race-based coefficient directly, thus delaying Mr. Maddox's accrual of wait time, and prejudicing his chances of receiving a donor kidney.

82. Defendants further knowingly input and used these modified wait times for Black patients, including Mr. Maddox, in UNOS's UNet software, causing them to be ranked lower for specific donor kidneys than non-Black patients. Even after UNOS admitted the practice was racially discriminatory, Defendants failed to take prompt action to ensure Black patients' (including Mr. Maddox's) wait times were recalculated.

83. The damages resulting from the above-described racial discrimination include but are not limited to depriving and/or delaying Mr. Maddox's award of a donor kidney. This discrimination also caused Mr. Maddox to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs and costs related to the failure of his at-home dialysis, and also lost wages stemming from early retirement because of additional dialysis treatments and other resulting medical conditions caused by application of the race-based coefficient by Defendants.

84. The above-described racial discrimination caused additional damages including but not limited to pain and suffering, severe emotional distress resulting in a looming fear of death and accompanying tearful conversations with his wife and children, constant fatigue, the inability to travel, and the loss of enjoyment of life.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT THREE
### (Breach of Fiduciary Duty)

85.     Mr. Maddox re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

86.     This cause of action is brought by Mr. Maddox against Swedish.

87.     As the transplant hospital for Mr. Maddox, Swedish owed Mr. Maddox a fiduciary duty. Swedish acted as an intermediary between Mr. Maddox and the market for donor kidneys, similar to how a stock broker operates for his clients' benefit in the financial markets. Mr. Maddox, having no ability to communicate with UNOS or advocate for himself, trusted and relied on Swedish to act in his best interests in obtaining for him a life-saving kidney.

88.     Swedish breached its fiduciary duty to Mr. Maddox by engaging in racial discrimination against him. Swedish knowingly submitted eGFR scores tainted by use of the race-based coefficient to UNOS for inclusion in its UNet algorithm, prejudicing Mr. Maddox's chances to receiving a donor kidney. Even after UNOS changed course and prohibited the use of the race-based coefficient, Swedish failed for more than a year to recalculate Mr. Maddox's wait time.

89.     The damages resulting from the above-described breaches of fiduciary duty include but are not limited to depriving and/or delaying his award of a donor kidney. This discrimination also caused Mr. Maddox to incur economic injuries, including but not limited to, continued medical costs such as dialysis costs and costs related to the failure of his at-home dialysis, and also lost wages stemming from early retirement because of additional dialysis treatments and other resulting medical conditions caused by application of the race-based coefficient by Defendants.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

90.     The above-described breach of fiduciary duty caused additional damages including, but not limited to, pain and suffering and severe emotional distress resulting in a looming fear of death and accompanying tearful conversations with his wife and children, constant fatigue, the inability to travel, and the loss of enjoyment of life.

**COUNT FOUR**
**(Outrage)**

91.     Mr. Maddox re-alleges and incorporates herein by reference, as though set forth in full, each of the allegations set forth above.

92.     This cause of action is brought by Mr. Maddox against all Defendants.

93.     Defendants' conduct, as described in this Complaint, can only be described as so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

94.     Defendants' extreme and outrageous conduct, intentionally and/or recklessly caused Mr. Maddox the harms and damages described herein, including severe emotional distress.

95.     The above-described outrage caused additional damages including, but not limited to, pain and suffering and severe emotional distress resulting in a looming fear of death and accompanying tearful conversations with his wife and children, constant fatigue, the inability to travel, and the loss of enjoyment of life.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, Mr. Maddox prays for relief against Defendants as follows:

1.     For damages in compensation for the economic, medical, personal injuries, pain and suffering, and loss of consortium sustained by the Mr. Maddox in an amount to be determined by evidence;

COMPLAINT
() - 20

2.    For pre-judgment interest on all damages awarded by this Court;

3.    For reasonable attorneys' fees and costs of suit incurred herein; and

4.    For such other and further relief as the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Mr. Maddox hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 7th day of June, 2024.

**KELLER ROHRBACK L.L.P.**

By: */s David J. Ko*
By: */s Daniel P. Mensher*
David J. Ko, WSBA #38299
Daniel P. Mensher, WSBA #47719
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: dko@kellerrohrback.com
          dmensher@kellerrohrback.com

**ELLIS GEORGE LLP**

By: */s Matthew L. Venezia*
Matthew L. Venezia, *pro hac vice forthcoming*
2121 Avenue of the Stars, Suite 3000
Los Angeles, CA, 90067
Telephone: (310) 274-7100
Fax: (340) 275-5697
Email: mvenezia@ellisgeorge.com

By: */s George Laiolo*
George Laiolo, *pro hac vice forthcoming*
44 Montgomery Street, Suite 1280
San Francisco, CA 94014
Telephone: (415) 391-7100
Fax: (415) 391-7198
Email: glaiolo@ellisgeorge.com

***Attorneys for Plaintiff***

COMPLAINT
() - 21