THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTHUR MADDOX,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED NETWORK FOR ORGAN SHARING and SWEDISH HEALTH SERVICES D/B/A SWEDISH MEDICAL CENTER,<br><br>    Defendants. | No. 2:24-cv-00811-RAJ<br><br>ORDER |

## I.  INTRODUCTION

THIS MATTER is before the Court on consideration of Plaintiff's Proposed Amended Complaint. Dkt. # 40-1. The Court dismissed Plaintiff's Washington Law Against Discrimination ("WLAD") claim against Defendant United Network for Organ Sharing ("UNOS") without prejudice in its March 28, 2025 Order ("Motion to Dismiss Order"). Dkt. # 40. Thereafter, Plaintiff filed a proposed amended complaint. Dkt. # 41-1. Following the Court's instructions, Dkt. # 42, Plaintiff and UNOS filed supplemental briefing to address whether the amended allegations cure the earlier defects. Dkts. # 47–48. For the reasons set forth below, the Court finds the allegations are sufficient and amendment appropriate.

ORDER - 1

## II. BACKGROUND

This matter involves the historical use of a race-based adjustment in kidney function calculations that affected how and when Black patients in need of kidney transplants, including those in Washington State, became eligible to accrue wait time on the national organ transplant list. In this action, Plaintiff Arthur Maddox asserts four causes of action against Defendants Swedish Health Services ("Swedish") and UNOS for their role in his harm described in the Complaint. Dkt. # 1.

### A. Factual Background[1]

Defendant UNOS is a private, non-profit organization that operates under a federal contract to manage the national organ transplant waitlist through the Organ Procurement and Transplantation Network. Dkt. # 1 ¶¶ 29–30. For years, UNOS's policies permitted and endorsed the use of a race-based coefficient in estimated glomerular filtration rate ("eGFR") calculations, a test used to assess kidney function, which artificially inflated eGFR scores and delayed eligibility to accrue kidney transplant wait time for Black patients. *See id.* ¶¶ 42–45. This adjustment, based on discredited assumptions about Black individuals' physiology, was not applied to other racial groups and resulted in significant disparities in transplant access. *See id.* ¶¶ 43–44, 50. Although concerns about the practice were raised as early as 2011, UNOS did not eliminate the use of the race-based coefficient for eGFR calculations until June 2022. *See id.* ¶¶ 48, 56. Further, UNOS did not adopt a corrective policy until January 2023, which required transplant hospitals to identify and submit wait time adjustment requests for affected Black patients by January 2024. *See id.* ¶¶ 57–58. In the interim, Black patients continued to experience the effects of the discriminatory policy and practice. *See id.* ¶ 59.

---

[1] The Court only briefly summarizes the facts alleged in this case with respect to UNOS. The Court's Order regarding the Motions to Dismiss provides a more detailed overview of the facts of the Complaint. *See* Dkt. # 40; *Maddox v. United Network for Organ Sharing*, No. 24-cv-00811, 2025 WL 943115, at *1–2 (W.D. Wash. Mar. 28, 2025).

### B. Procedural History

On March 28, 2025, the Court ruled on two motions to dismiss, which it granted in part and denied in part. Dkt. # 40. The Court dismissed Plaintiff's Washington Law Against Discrimination ("WLAD") claim against Defendant UNOS without prejudice and permitted Plaintiff to file a proposed amended complaint. *See id*. at 14, 19. The Order explained while Plaintiff's Complaint satisfied three of the four elements of a WLAD claim against UNOS, it was not clear that the Complaint supported that UNOS was a "place of public accommodation" for the purposes of triggering liability under the statute. *See id*. at 14. On April 7, 2024, Plaintiff filed a proposed amended complaint that included additional factual allegations that tied Defendant UNOS's conduct to a physical place in Washington State. Dkt. # 40-1 ¶¶ 80–87. Thereafter, the Court invited Plaintiff and Defendant UNOS to submit limited supplemental briefing to address whether amendment, as proposed by Plaintiff, would be futile. Dkt. # 42

### C. Proposed Amended Complaint

In the proposed amended complaint, Plaintiff alleges that Defendants UNOS and Swedish violated the WLAD, which guarantees the right to be free from discrimination in places of public accommodation, including in the enjoyment of privileges such as placement on the national kidney transplant waitlist and receipt of a donor kidney. *See* Dkt. # 40-1 ¶¶ 81–84. The amended allegations assert that these privileges are offered exclusively through transplant hospitals, like Swedish, Mr. Maddox's treating hospital, which qualify as places of public accommodation under the statute, and that both UNOS and Swedish engaged in discriminatory conduct that interfered with Plaintiff's ability to fully access those privileges. *See id*. ¶¶ 84–87.

## III.     DISCUSSION

### A.     The WLAD

The WLAD prohibits discrimination on the basis of protected class[2] status and provides for "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement[.]" RCW 49.60.030(1).  A place of "public resort, accommodation, assemblage, or amusement" is defined as including, but not limited to:

> [A]ny place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities, whether conducted for the entertainment, housing, or lodging of transient guests, or for the benefit, use, or accommodation of those seeking health, recreation, or rest, or for the burial or other disposition of human remains, or for the sale of goods, merchandise, services, or personal property, or for the rendering of personal services, or for public conveyance or transportation on land, water, or in the air, including the stations and terminals thereof and the garaging of vehicles, or where food or beverages of any kind are sold for consumption on the premises, or where public amusement, entertainment, sports, or recreation of any kind is offered with or without charge, **or where medical service or care is made available**, or where the public gathers, congregates, or assembles for amusement, recreation, or public purposes, or public halls, public elevators, and public washrooms of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants, or any public library or educational institution, or schools of special instruction, or nursery schools, or day care centers or children's camps[.]

RCW 49.060.040(2) (emphasis added).  A prima facie case of discrimination under the WLAD requires a plaintiff to show:

> (1) he is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against him by not treating him in a manner comparable to those outside the protected class, and (4) the protected status was a substantial factor causing the discrimination.

RCW 49.60.215; *Demelash v. Ross Stores*, 105 Wash. App. 508, 526 (2001).

---

[2] The WLAD prohibits discrimination based "on race, creed, color, national origin, citizenship or immigration status, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.030(1).

The Washington State legislature has declared "that practices of discrimination . . . threaten[ ] not only the rights and proper privileges of [Washington's] inhabitants but menace[ ] the institutions and foundation of a free democratic state." RCW 49.60.010. The legislature has also directed courts to liberally construe WLAD to eradicate discrimination, including discrimination in places of public accommodation. RCW 49.60.010, .020; *see also Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD* 171, 189 Wash. 2d 607, 614 (2017) (quoting *Marquis v. City of Spokane*, 130 Wash. 2d 97, 108 (1996)). The Supreme Court of the State of Washington has held that "that a statutory mandate of liberal construction requires that [courts] view with caution any construction that would narrow the coverage of the [WLAD]." *Marquis,* 130 Wash. 2d at 108 (citing *Shoreline Cmty. Coll. Dist. No. 7 v. Emp. Sec. Dep't*, 120 Wash. 2d 394, 406 (1992)).

**B.    Parties' Arguments**

Plaintiff states that the WLAD provides the right to be free of discrimination and "[t]his right includes 'the full enjoyment of any of the . . . privileges of any place of . . . accommodation[.]" *See id*. Plaintiff contends "Mr. Maddox suffered racial discrimination while seeking the privilege of being placed on the kidney transplant waitlist and receiving a kidney transplant through UNOS" and "UNOS provides access to transplants and transplant waitlist only through hospitals" such as at Swedish, which is a place of public accommodation. *See id*. at 4. First, Plaintiff argues that "the relevant inquiry is whether the act of discrimination occurred in a place of public accommodation" rather than whether a defendant owns or operates that place themselves. *See id*. Second, Plaintiff asserts that the services UNOS provided to Mr. Maddox were sufficiently connected to Swedish, a place of public accommodation, which satisfies the WLAD's requirements. *See id*. at 6–7.

ORDER - 5

Defendant argues amendment is futile because UNOS does not have a physical presence in Washington State and Plaintiff fails to allege that UNOS operates a place of public accommodation in the state. *See* Dkt. # 47 at 4–7. Defendant asserts its connection to Swedish is insufficient because although "Swedish patients might benefit from UNOS's services" this "does not equate to UNOS operating a place of public accommodation in Washington." *See id*. at 5. Defendant urges the Court to follow the caselaw that supports a distinction between "services and places" when determining the scope of a "place of public accommodation" under the WLAD. *See id*. at 6.

### C.     Analysis

The only issue the Court need to decide is whether the proposed amended complaint sufficiently alleges UNOS's provides services in a manner that constitutes it as a "place of public accommodation" such to subject it to liability under the WLAD.

Leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile. *See* Fed. R. Civ. P. 15(a); *see also Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006). A "proposed amendment is not futile [where it] would withstand a motion to dismiss." *Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012); *see Deal v. Countrywide Home Loans, Inc.*, No. 09-cv-01643, 2013 WL 3157914, at *2 (N.D. Cal. June 20, 2013) (noting that "evaluating whether a proposed amendment is futile requires the Court to determine whether the amendment would withstand a motion to dismiss"). A court may find amendment inappropriate where a proposed amended complaint lacks a cognizable legal theory or fails to assert sufficient facts under a cognizable legal theory. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *see also Richmond v. Spokane Cnty.*, No. 21-cv-00129, 2021 WL 4951574, at *2 (E.D. Wash. Oct. 25, 2021).

ORDER - 6

There is limited caselaw on the issue of what constitutes a "place of public accommodation" for the purposes of the WLAD. It appears this is because parties often stipulate to this element of a plaintiff's prima facie discrimination case. *See, e.g., Doscher v. Timberland Reg'l Libr.*, No. 22-cv-05340, 2022 WL 4534403, at *5 (W.D. Wash. Sept. 28, 2022) ("The parties do not dispute that the Library is a place of public accommodation for purposes of both [the WLAD and ADA]."); *Lewis v. Phan,* No. 19-cv-0314, 2020 WL 885751, at *3 (W.D. Wash. Feb. 24, 2020) (noting defendants, owners of real property, did not contest that the property was a place of public accommodation where part of a building was leased to a restaurant); *Njoroge v. Vocational Training Insts., Inc.*, No. 16-cv-00951, 2017 WL 4700297, at *7 (W.D. Wash. Oct. 19, 2017) (stating "the parties do not dispute whether [a medical career college] is a place of public accommodation"); *Hartleben v. Univ. of Washington*, 194 Wash. App. 877, 884 (2016) (noting that "[t]he parties agree . . . that the University is a place of public accommodation subject to the WLAD"); *Washington State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wash. App. 174, 187 (2013) ("The defendants do not dispute that their theaters are places of public accommodation.").

In *Fell v. Spokane Transit Auth.*, the Washington State Supreme Court directly addressed the question: "What is a place of public accommodation under RCW 49.60.215?" 128 Wash. 2d 618, 622 (1996). In this case, the parties agreed that "public transit" was a place of public accommodation, but plaintiffs argued "a place of public accommodation is the entire service area of the [transit system]" including the recently launched paratransit services. *Id.* at 638. The paratransit services operated "within an area three-quarters of a mile around the fixed routes already operated by STA." *Id.* at 623. The Supreme Court of Washington rejected plaintiffs' proposed scope of a place of public accommodation and cautioned this view would have "unsettling implications for such

fixed[-]point services as libraries, schools, and other services traditionally provided at specific locales." *Id*. at 639. The opinion clarified the WLAD's "mandate to provide access to places of public accommodation is not a mandate to provide services."

More recent caselaw has endorsed a broader interpretation of a "place" for the purposes of applying the WLAD to organizations. One court observed "it may seem counterintuitive to call an organization a place, courts in Washington and around the country have expanded the scope of anti-discrimination laws to cover wider areas of public life." *Apilado v. N. Am. Gay Amateur Athletic All*., 792 F. Supp. 2d 1151, 1158 (W.D. Wash. 2011). Further, in *Tenino Aerie v. Grand Aerie*, the Supreme Court of Washington cited Minnesota's expanded definition of "place of public accommodation" from fixed locations to mobile sites to business facilities of any kind whose goods and privileges are made available to the public. 148 Wash. 2d 224, 250 (2002). The Court in *Tenino Aerie* concluded that "[l]ike other states' public accommodation laws, the WLAD reaches the membership policies of organizations." *Id*.

The instant case is distinguishable from *Fell*. Mr. Maddox's healthcare related services, benefits, and privileges received from UNOS are all connected to services received at Swedish, at a fixed-point location. This distinction alleviates the *Fell* majority's concern about the potentially boundless scope of an entity's obligation to provide services in a nondiscriminatory manner beyond fixed points where the services were already provided and were considered a "place of public accommodation." Despite UNOS's proposed interpretation of the *Fell* decision, the Court finds that it does not foreclose the possibility that an organization without a physical presence in the state can satisfy the WLAD's requirements where those services are connected to a physical place of public accommodation in Washington State.

ORDER - 8

UNOS's practices and policies require transplant-seeking patients to receive referrals at transplant hospitals. Dkt. # 41-1 ¶¶ 54, 84. UNOS's policies compel patients to seek medical attention at a transplant hospital as a prerequisite to providing the patient with the benefit of a spot on the national organ transplant list. *Id*. ¶ 84. From the facts alleged, UNOS undoubtedly "uses" the transplant hospital in some way, as an intermediary, if not an agent, to provide Washingtonians, such as Mr. Maddox, with the privilege of a spot on the national organ transplant waitlist and ultimately critical life-saving access to transplant organs. Therefore, it is sufficient that Plaintiff alleges UNOS "used" the properties and facilities at transplant hospitals—which are indisputably places of public accommodation in Washington State—to provide access to the national organ transplant waiting list.

As stated above, the state legislature instructs courts to interpret the WLAD broadly to effectuate the purpose of the statute and eradicate discrimination. It would be inconsistent with that directive for a court to allow an entity to evade liability for a discriminatory conduct that occurred in a place of public accommodation in Washington State.[3]

The Court finds that the Plaintiff's proposed amended complaint presents a cognizable legal theory and states sufficient facts to support a WLAD claim against Defendant UNOS. Accordingly, the Court finds that amendment is not futile and will permit amendment of the Complaint to include Plaintiff's WLAD claim against UNOS. The Court directs Plaintiff to file the proposed amended complaint as a First Amended Complaint on the docket within seven (7) days of this Order.

---

[3] Although a transplant list is not a "membership organization," it may be possible that the policy, which included an underlying medical assessment with a race-based classification, that determined access and priority on a national public organ transplant waiting list meets the "place of public accommodation" requirement under the WLAD because it provides a "privilege available to the public." *Tenino Aerie*, 148 Wash. 2d at 224. The Court observes that Plaintiff briefly raised this point, but the Court finds that the argument is not fully developed. *See* Dkt. # 34 at 21–22; Dkt. # 48 at 5–6. Accordingly, as it is not necessary to resolve the issue of amendment, the Court will not resolve this issue or determine whether it is a cognizable legal theory in this Order.

## IV. CONCLUSION

For the reasons stated above, the Court permits amendment of the complaint. Plaintiff must file the proposed amended complaint as a First Amended Complaint on the docket within seven (7) days of this Order.

Dated this 11th day of June, 2025.

*[signature]*

The Honorable Richard A. Jones
United States District Judge